**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------------------X
ANTHONY BONCIMINO,

                     Plaintiff,

     -against-

NEW YORK STATE UNIFIED COURT SYSTEM,
MAJOR MICHAEL DEMARCO in his individual capacity,
CAPTAIN JOSEPH DIBELLO in his individual capacity,
CAPTAIN ROBERT MIGLINO in his individual capacity,
and SERGEANT THOMAS RICCIARDI in his individual
capacity.

                    Defendants.
-------------------------------------------------------------------X

Case No.: 17-cv-6760 (VSB)

**AMENDED COMPLAINT**

**Jury Trial Demanded**

       Plaintiff ANTHONY BONCIMINO ("Plaintiff" or "Officer Boncimino") by and through

his attorneys, FISHER TAUBENFELD LLP, alleges the following against Defendants NEW

YORK UNIFIED COURT SYSTEM ("UCS" or the "State"), MAJOR MICHAEL DEMARCO,

in his individual capacity ("Defendant DeMarco"), CAPTAIN JOSEPH DIBELLO, in his

individual capacity ("Defendant Dibello), CAPTAIN ROBERT MIGLINO, in his individual

capacity ("Defendant Miglino") and SERGEANT THOMAS RICCIARDI, in his individual

capacity ("Defendant Ricciardi") (collectively the "Individual Defendants") (together with the

State, the "Defendants") as follows:

## INTRODUCTION

       1.     This action arises from Defendants' reprehensible discriminatory conduct against

Officer Boncimino, a ten (10) year veteran court officer of the State who became disabled in the

line of duty.

       2.     Through a systematic pattern of abuse and hostility over a period of two years, the

Individual Defendants, all senior court officers of the State, made a mockery of Officer

Boncimino's work-related injuries by repeatedly spewing discriminatory epithets at him, conspicuously posting derisive pictures poking fun at his disabilities, and alienating and demoralizing him at every turn—in front of court personnel, his colleagues, his superiors, and the public.

3.     For two years, Defendants continuously humiliated and embarrassed Officer Boncimino by calling him **"LIMPY GIMPY"**, **"BROKEN"**, and **"FRAGIMINO"** and **"FRAGILMINO"** (terms they mockingly coined by combining the word "fragile" with his last name).  They placed in different areas of the courthouse photographs of him lying in a hospital bed after sustaining an injury while trying to subdue a combative litigant in the courthouse, and variations of the same image digitally modified to depict him in a bubble suit and full-body cast. They vandalized his locker with derogatory messages such as **"CUNT"**, **"FRAGILE HANDLE WITH CARE"**, and **"MR. GLASS."**

4.     In a court system that boasts high rates of violence, Officer Boncimino was among the officers who most zealously carried out his job duties, placing himself in a position highly prone to harm and injury.  While other court officers resisted confrontation to avoid getting hurt, Officer Boncimino assiduously took action to guard the courthouse and quell conflict.  Rather than commending his valiant efforts, Defendants created an atmosphere polluted with hatred toward him simply because he became injured in the line of duty.

5.     Defendants established a platform for Officer Boncimino's superiors, subordinates, and colleagues to outwardly harass him without fear of censure, demonstrating not only a wholesale disregard for the anti-discrimination laws, but an above-the-law attitude that undercuts the very system court officers swear to protect.  When Officer Boncimino complained about the discrimination to his superiors and Human Resources, his pleas for help were fully ignored.

2

Defendants—ego-driven by their positions of power—only grew angrier when Officer Boncimino dared to complain and challenge their authority.   Human Resources barely acknowledged his complaints, let alone investigated them or took any action to redress Defendants' repugnant conduct.

6.      Officer Boncimino's union was aware of Defendants' discriminatory and retaliatory conduct, but stood idly by, doing nothing to help him—in large part because of the union's conflicting position in simultaneously representing the Individual Defendants (to whom the union clearly and consistently has shown favor).

7.      Defendants' unlawful conduct extended beyond daily harassment to (i) a patent refusal to accommodate Officer Boncimino's disabilities, (ii) discriminatory and retaliatory treatment in the terms and conditions of Officer Boncimino's employment based on Officer Boncimino's disabilities, and (iii) retaliation against Officer Boncimino for exercising his rights under the Family and Medical Leave Act of 1993.

8.      Defendants also threatened to fire Officer Boncimino because of his disability and vehemently opposed his application for workers' compensation coverage, even though Officer Boncimino's injuries are irrefutably work-related.   It bears mention that the Workers Compensation Board has uniformly held in Officer Boncimino's favor, awarding him workers' compensation benefits for his work-related injuries.

9.      On August 17, 2017, Defendants subjected Officer Boncimino to yet another heinous act of discrimination, pushing him to his breaking point. Just a few weeks after Officer Boncimino returned to work from medical leave, Defendants posted more hateful messages in his locker mocking his disability. Already dejected and traumatized by years of endless discrimination, Officer Boncimino suffered a panic attack when he saw the images and had to

leave work to visit a local hospital for emergency treatment.

10.     Then on August 28th, while Officer Boncimino was home on medical leave due to the August 17th incident, Defendants showed up at his home and repeatedly banged on his door, demanding that he immediately contact the major—who, no doubt, was incensed that Officer Boncimino complained about the August 17th incident and was on medical leave.  Defendants made Officer Boncimino feel like a prisoner in his own home.

11.     Outrageously, Defendants also had the union call Officer Boncimino's mother to leave a threatening voicemail demanding that Officer Boncimino call the major.

12.     The extent to which Defendants have violated Officer Boncimino's rights and the brazen attitude with which Defendants have done so is almost impossible to comprehend. Defendants appear to believe that the law does not apply to them and that they have an unfettered right to haze disabled employees who don't fit in with their macho fraternity-like culture.

13.     Defendants' highly visible and unbridled harassment toward Officer Boncimino has sent a demoralizing message to other court officers—that is, discrimination is not only tolerated, but institutionalized, fostered and condoned by the system's highest-ranking officers.

14.     Defendants' discriminatory treatment has been so heinous and pervasive that Officer Boncimino has developed post-traumatic stress disorder (PTSD), severe anxiety, depression, lack of self-worth, and myriad other mental, emotional, and physical harm, for which he is receiving treatment and must be compensated by the Defendants.

## **LEGAL POSTURE**

15.     Officer Boncimino brings this case against the State pursuant to the Federal Rehabilitation Act of 1973, 29 U.S.C. § 794 *et al.*

4

16.     Officer Boncimino brings his claims against the Individual Defendants under the Administrative Code of the City of New York § 8-101 *et seq.* ("City Human Rights Law") and the Family and Medical Leave Act of 1993, 29 U.S.C. § 2601 *et al.* (the "FMLA").

### Background Regarding State Sovereign Immunity

17.     The State's bald-faced disregard for Officer Boncimino's rights has largely been engendered by the State's insulation from various types of liability arising from constitutional state sovereign immunity.

18.     In other words, because many claims against state agencies are hampered by the Eleventh Amendment to the United States Constitution—which, with limited exception, provides state governments with immunity from suit—agents of the State have been emboldened over time to violate the law without punishment.

19.     The Eleventh Amendment states that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const., Amdt. 11.  Courts have interpreted the amendment broadly.

20.     Here, it is because of a limited exception to New York State's sovereign immunity that Officer Boncimino is able to propound his claims of discrimination and retaliation against the State.

### *The Federal Rehabilitation Act of 1973*

21.     The Rehabilitation Act of 1973, 29 U.S.C. § 794 (the "Rehabilitation Act"), establishes a comprehensive federal program aimed at improving the lot of the handicapped. Among its purposes are to promote and expand employment opportunities in the public and private sectors for handicapped individuals, and place handicapped individuals into employment.

22.     Unlike with the Americans With Disabilities Act, sovereign immunity is not a bar to bringing a Rehabilitation Act claim in federal court.  Because the Rehabilitation Act was enacted pursuant to the Spending Clause of Article I, Congress can require states to waive their sovereign immunity for Rehabilitation Act claims as a condition of accepting federal funds.  Since New York State accepts federal funding, it has waived its sovereign immunity for claims brought under the Rehabilitation Act.

23.     Section 504 of the Rehabilitation Act provides that "no otherwise qualified individual with a disability ... shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance or under any program or activity conducted by any Executive agency...."  29 U.S.C. § 794(a).

24.     Accordingly, Officer Boncimino brings his claims of disability discrimination and retaliation against the State under the Rehabilitation Act.

### *Claims Against the Individual Defendants*

25.     Although Defendant UCS has immunity from suit under certain federal statutes, the Individual Defendants are not immune to suit.

26.     The Individual Defendants had the authority to alter the terms and conditions of Officer Boncimino's employment.

6

27.     Each Individual Defendant was Officer Boncimino's commanding officer and had the authority to schedule his shifts, reassign him to different posts and/or work locations, assign him to light duty, discipline him, and make recommendations that are given significant weight in terminating his employment.

28.     Further, the Individual Defendants aided and abetted the violations by engaging in the acts alleged in this Complaint or facilitating such acts.

29.     Accordingly, Officer Boncimino brings his claims of disability discrimination and retaliation against the Individual Defendants under the FMLA and City Human Rights Law.

## JURISDICTION AND VENUE

30.     This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 (original federal question jurisdiction).

31.     Supplemental jurisdiction over Plaintiff's City Human Rights Law claims is conferred by 28 U.S.C. § 1367(a), as such claims are so related in this action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.

32.     Venue is proper in this District because Defendants conduct business in this District, and acts and/or omissions giving rise to the claims alleged herein took place in this district.

33.     Pursuant to § 8-502 (c) of the City Human Rights Law, Plaintiff served a copy of this Complaint on the City of New York Commission on Human Rights and on the City of New York Corporation Counsel.

## PARTIES

### *Plaintiff*

34.     Officer Boncimino is a New York State resident who has suffered from various

injuries he sustained while performing his job duties as a court officer for the State.

35.     Officer Boncimino's injuries constitute disabilities under the Rehabilitation Act.

36.     At all relevant times, Officer Boncimino was an "employee" within the meaning of the Rehabilitation Act, protected from discrimination and retaliation on the basis of disability.

37.     Officer Boncimino's injuries constitute disabilities under City Human Rights Law.

38.     At all relevant times, Officer Boncimino was a "person" within the meaning of City Human Rights Law, protected from discrimination and retaliation by the Individual Defendants on the basis of disability.

39.     Officer Boncimino's injuries constitute a qualifying condition under the FMLA.

40.     Officer Boncimino was at all times an "eligible employee" within the meaning of the FMLA in that he had been continuously employed by Defendants for more than one year and had worked more than 1,250 hours during the twelve months preceding his leave of absence in January 2017.  Officer Boncimino is protected from retaliation for exercising his rights under the FMLA.

*Defendants*

41.      UCS is the Judicial Branch of New York State Government established pursuant to Article VI of the New York State Constitution.

42.     At all relevant times, UCS received federal financial assistance.

43.     UCS is therefore subject to the provisions of the Rehabilitation Act.

44.     Defendant DeMarco is a senior commanding officer of UCS with the rank and title of major.  He controls the family court system throughout the City of New York and has been a court officer for several decades.  He is the highest-ranking officer represented by Officer Boncimino's union.  At all relevant times, Defendant DeMarco supervised Officer Boncimino's

8

work and maintained and exercised the authority to determine the terms and conditions of Officer Boncimino's employment.  Defendant DeMarco was aware of, participated in, and condoned the discriminatory and retaliatory acts perpetrated against Officer Boncimino.  Defendant DeMarco failed to take remedial action to protect Officer Boncimino from discrimination and retaliation in the workplace.  Defendant DeMarco stated that he did not like Officer Boncimino because he is injured.  Defendant DeMarco told Officer Boncimino, in sum and substance, that he was useless as a court officer and then transferred Officer Boncimino to Kings County from New York County. Upon information and belief, Defendant DeMarco told other officers that despite Officer Boncimino's legitimate medical leave from work, Officer Boncimino is a "sick leave abuser." Defendant DeMarco made the decisions to deny Officer Boncimino light duty as an accommodation for his disability and to transfer Officer Boncimino.  His decisions were based on discriminatory and retaliatory motives. Defendant DeMarco repeatedly spoke in a harsh and demeaning tone to Officer Boncimino and threatened to terminate Officer Boncimino based on his disability and in retaliation for Officer Boncimino taking disability leave.  Based on the foregoing and other facts in this Complaint, Defendant DeMarco is individually liable for the discriminatory and retaliatory acts and practices described herein.

45.     Defendant Dibello is a senior commanding officer of UCS with the rank and title of lieutenant, who at all relevant times supervised Officer Boncimino's work and maintained and exercised the authority to determine the terms and conditions of Officer Boncimino's employment. Defendant Dibello was aware of, participated in, and condoned the discriminatory and retaliatory acts perpetrated against Officer Boncimino.  Defendant Dibello failed to take remedial action to protect Officer Boncimino from discrimination and retaliation in the workplace.  Defendant Dibello berated Officer Boncimino because of his disability and explicitly stated, "I don't like you,

9

you're broken." Defendant Dibello told Defendant Miglino that he did not like Officer Boncimino because he is broken. Defendant Dibello subjected Officer Boncimino to heightened performance standards because of Officer Boncimino's disability; Defendant Dibello told Officer Boncimino's former partner to ensure that Officer Boncimino **"DOES *ALL* THE WORK"** and **"DOES NOT SLACK,"** and to report back to him if Officer Boncimino failed to do his job. Based on the foregoing and other facts in this Complaint, Defendant Dibello is individually liable for the discriminatory and retaliatory acts and practices described herein.

46.     Defendant Miglino is a senior commanding officer of UCS with the rank and title of captain, who at all relevant times supervised Officer Boncimino's work and maintained and exercised the authority to determine the terms and conditions of Officer Boncimino's employment. Defendant Miglino was aware of, participated in, and condoned the discriminatory and retaliatory acts perpetrated against Officer Boncimino. Defendant Miglino failed to take remedial action to protect Officer Boncimino from discrimination and retaliation in the workplace. Based on the foregoing and other facts in this Complaint, Defendant Miglino is individually liable for the discriminatory and retaliatory acts and practices described herein.

47.     Defendant Ricciardi is a senior commanding officer of UCS with the rank and title of sergeant, who at all relevant times supervised Officer Boncimino's work and maintained and exercised the authority to determine the terms and conditions of Officer Boncimino's employment. Defendant Ricciardi was aware of, participated in, and condoned the discriminatory and retaliatory acts perpetrated against Officer Boncimino. Defendant Ricciardi failed to take remedial action to protect Officer Boncimino from discrimination and retaliation in the workplace. Defendant Ricciardi made fun of Officer Boncimino because of his disability by facetiously asking whether Officer Boncimino needed an ambulance to take him to testify at a grand jury proceeding.

Defendant Ricciardi made the decision to relocate Officer Boncimino's locker to an undesirable location because of Officer Boncimino's disability. Defendant Ricciardi repeatedly called Officer Boncimino "limpy gimpy" and "Fragilmino" and told Officer Boncimino that he should be put in a bubble. Based on the foregoing and other facts in this Complaint, Defendant Ricciardi is individually liable for the discriminatory and retaliatory acts and practices described herein.

48. The Individual Defendants are Officer Boncimino's employer under the FMLA and City Human Rights Law.

## FACTUAL ALLEGATIONS

### Background Regarding Officer Boncimino's Employment with UCS

49. In or about 2002, Officer Boncimino took a civil service examination to apply for a position as a New York State Court Officer Trainee.

50. On May 21, 2007, after successfully completing rigorous physical and mental tests, Officer Boncimino was appointed to the title of New York State Court Officer Trainee.

51. In August 2007, Officer Boncimino completed training and was assigned to the Sixth Judicial District to serve a two-year probationary traineeship.

52. During his traineeship, Officer Boncimino participated in intensive physical training; learned defensive tactics, basic life support, and how to operate firearms; and completed a challenging academic curriculum covering procedural law governing UCS, the court structure, agency policies and guidelines, arrest procedures, baton and pepper spray use, prisoner handling/escort, counter-terrorism training, bomb detection device training, critical incident management, law enforcement mental health, domestic violence awareness, incident command systems, evacuation procedures, oral and written communication skills, defensive driving, and how to interact with the general public.

53.     As a trainee and later court officer, Officer Boncimino swore above all else to maintain order and decorum in the courts and to protect and serve the judicial system—an oath he has honored and upheld to the highest degree throughout his employment with the State.

### Officer Boncimino's Transfer to Bronx Family Court in or about February/March 2009

54.     In or about February or March 2009, Officer Boncimino was transferred to Bronx Family Court where he continued his traineeship and would spend the next several years of his employment with the State.

55.     Bronx Family Court is one of UCS's most violent venues, serving a highly troubled population entrenched in gang violence, drug dealing and crime.  Violent confrontations are innumerable and occur daily, with officers frequently sustaining injuries in the line of duty.  The courthouse is considered a "hot zone" of brutality where litigants frequently threaten and assault court officers, court personnel, and others within the courthouse.

56.     Despite his knowledge of these facts, Officer Boncimino accepted his assignment to the Bronx with dedication and enthusiasm.

57.     On or about May 21, 2009 while working in the Bronx, Officer Boncimino completed his training and was promoted to a Line 18 New York State Court Officer. He was assigned to provide security in the hall and support as needed to Part 41 on the 8th floor.

58.     The 8th floor generates heavy visitor traffic each day and houses various clerks' offices.

59.     Litigants are directed to Part 41 when they sign waivers agreeing to be assigned a referee in lieu of a judge for purposes of expediting their matters.

60.     Presumably because judges do not preside over matters in Part 41 and in an effort

to cut costs, court officers are not routinely assigned to provide security for the part. This is true even though the courtroom hears the same types of cases and serves the same troubled population as other parts in Bronx Family Court.

61. Officer Boncimino was frequently the lone officer on the 8th floor, rushing by himself to aid Part 41 during emergency situations.

62. Officer Boncimino held this difficult assignment for much of his employment and did so with exemplary performance.

63. His only shortcoming, it seems, was that in his diligent fulfillment of job responsibilities, he became disabled in the line-of-duty.

*Officer Boncimino Is Injured in the Line of Duty*
*While Responding to a Distress Call*
*on January 4, 2012.*

64. On January 4, 2012, Officer Boncimino was on duty when a fellow court officer placed a distress call over the radio requesting emergency assistance.

65. From the audible screaming and commotion, Officer Boncimino determined that the incident required swift attention, so he ran to aid the officer.

66. While running to the scene, Officer Boncimino felt pain as his left knee locked in place, forcing him to stop running and preventing him from aiding the officer.

67. Despite the immense pain he felt, Officer Boncimino elected not to visit the hospital at the time of the incident and to continue reporting for duty.

68. In the weeks and months thereafter, he sought treatment from orthopedists as his knee injury grew progressively worse.

69. He tried to minimize his absences from work and only intermittently took time off.

70. By November 2012, when he was in so much pain that he could no longer report to

13

work, he commenced a line of duty medical leave.

71.     He was diagnosed with a torn medial meniscus of the left knee, requiring surgery.

72.     He underwent surgery for the meniscus tear on December 7, 2012.

73.     Following surgery, he continued to have chronic pain in his left knee and was diagnosed with peroneal nerve neuropathy about the left knee.

74.     He underwent a second surgery on July 18, 2013 for the neuropathy.

75.     Because of that line-of-duty injury, Officer Boncimino was on workers' compensation medical leave for approximately two years before he was able to return to work.

### Defendants Fail to Accommodate Officer Boncimino by Refusing to Reinstate Him to Light Duty in December 2014

76.     In December 2014, Officer Boncimino submitted a doctor's note to Defendants certifying him to return to work on light duty.

77.     Defendants categorically denied his light duty request without engaging in the interactive process to determine what, if any, accommodation or light duty assignment he required.

78.     Defendants told Officer Boncimino that he could only return to work on full duty, even though, upon information and belief, there were light duty positions to which Officer Boncimino could have been assigned and for which Officer Boncimino was qualified.

79.     Upon information and belief, at the time other court officers were assigned to conduct purely administrative functions and/or light duty.

80.     On May 18, 2015 with clearance from his doctor, Officer Boncimino returned to work on full duty.

### *Defendants Harass Officer Boncimino*
### *Based on His Disability After He Returns to Work*
### *on May 18, 2015*

81.    On Officer Boncimino's first day back to work, he discovered that the identification card he used to swipe in and out of work was not activated.  He brought the issue to the attention of a sergeant, who told him that the issue would be resolved.

82.    The next day, Officer Boncimino received a telephone call in which Defendant Dibello screamed at and berated him regarding the issue with his identification card.

83.    While disturbed by Defendant Dibello's misplaced outburst, Officer Boncimino respectfully explained that the issue was being handled by a sergeant.

84.    Defendant Dibello then screamed in sum and substance, **"FUCK WHAT HE SAID, I AM A LIEUTENANT AND YOU WILL LISTEN TO ME."**

85.    Defendant Dibello went on to state, **"I DON'T LIKE YOU. YOU'RE BROKEN,"** referring to Officer Boncimino's disability.

86.    He then ordered Officer Boncimino to contact Human Resources about the identification card and hung up on Officer Boncimino.

87.    When Officer Boncimino complained to Defendant Miglino about Defendant Dibello's discriminatory conduct, Officer Boncimino was transferred to Manhattan Family Court, but no action was taken against Defendant Dibello for his discriminatory conduct.

88.    Officer Boncimino would not have complained about Defendant Dibello's conduct had he known that in Manhattan Family Court he would experience shockingly heinous acts of disability discrimination and retaliation for the ensuing two years.

***Officer Boncimino Transfers in May 2015 to Manhattan Family Court,***
***Where Defendants Commence an Unrelenting Campaign of Harassment Against Him***

89.     In late May 2015, Officer Boncimino began working in Manhattan Family Court Part 2, which handles Custody, Visitation and Orders of Protection.

90.     Within the first few days of his new assignment, Defendant Dibello instructed Officer Boncimino's new partner to ensure that Officer Boncimino **"DOES *ALL* THE WORK"** and **"DOES NOT SLACK,"** and to report back to him if Officer Boncimino failed to do his job.

91.     When Officer Boncimino learned about Defendant Dibello's unwarranted scrutiny, he complained to Defendant Miglino.

92.     Defendant Miglino told Officer Boncimino **"DEFENDANT DIBELLO SAID YOU 'CAME TO US BROKEN.'"**

93.     Defendant Miglino also told Officer Boncimino that **"THE MAJOR [DEMARCO] DOES NOT LIKE YOU BECAUSE YOU'RE INJURED."**

94.     Officer Boncimino feared for his job and felt trepidation to request the accommodations he needed for his disability.

95.     Upon information and belief, Defendants took no action to investigate or redress Defendant Dibello's conduct.

96.     Defendants never followed-up with Officer Boncimino about his complaint.

***Defendants Engage in Deplorable Conduct Toward Officer Boncimino***
***When He Gets Injured in the Line of Duty During Another Emergency Incident***
***on September 30, 2015***

97.     On September 30, 2015 at approximately 1:00 p.m., Officer Boncimino rushed to quell yet another emergency in the courthouse where officers were struggling to subdue a large combative litigant.

16

98.     During the incident, Officer Boncimino severely injured his arm on a ledge when the court officers and litigant fell on top of him, forcing him to the ground under approximately 1000 pounds of weight.

99.     After the incident, Officer Boncimino visited the Operations Office of the courthouse, where Defendants commenced an unrelenting campaign of hostility and discrimination against him based on his disability.

100.     The Operations Office is where several supervisors are stationed and is frequented each day by court officers, attorneys, litigants, visitors, staff members, and members of the State's custodial department.  Several officers are assigned to the lobby area outside the Operations Office.

101.     When Officer Boncimino arrived hurt and in agony at the Operations Office, Defendant Miglino, Union Representative Philip Matteo, and several court officers and members of the court staff began laughing at and mocking him.

102.     It was in the Operations Office that day, in the presence of several people and within earshot of countless other individuals, that Officer Boncimino heard Defendants refer to him as **"FRAGILMINO"** for the first time. Defendants coined the term by combining the word "fragile" with his last name.  Officer Boncimino would hear this derogatory term and its close variation, **"FRAGIMINO"**, countless times over the next two years of his employment.

103.     Officer Boncimino told Defendants to stop their mockery, but Defendants continued making fun of him.

104.     Defendant Miglino was present at the time and did not put an end to the mockery. Rather, he participated in, if not spearheaded, it.

105.     Defendants continued to laugh at and mock Officer Boncimino while the paramedics evaluated him in the Operations Room.

106.    A short while after the injury, Officer Boncimino went to the emergency room of a local hospital.

107.    He was accompanied to the hospital by a fellow court officer, Michael Augello.

108.    While in the emergency room, Augello took a picture of Officer Boncimino lying in a hospital bed. The picture would later be posted throughout the courthouse to ridicule Officer Boncimino for his disability.

109.    X-rays taken in the hospital that day were inconclusive because Officer Boncimino's arm was so swollen. Officer Boncimino was discharged and advised to follow-up with a physician.

110.    Officer Boncimino was later diagnosed with lateral epicondylitis ("tennis elbow") for which he required on-going physical therapy and steroid injections.

111.    After he was discharged from the hospital on September 30th, Officer Boncimino returned to the courthouse.

112.    While in the Operations Room, the laughter and mockery resumed.

113.    Officer Boncimino left the courthouse dejected and humiliated that day.

114.    When he commenced a line-of-duty medical leave the next day, he learned that Defendants had posted conspicuously on the wall of the Operations Office the picture taken of him in the emergency room with the word **"FRAGIMINO"** written on it.

115.    He also learned that Defendants had posted several discriminatory images on his locker making fun of him for his disability.  Another court officer, William Borden, sent Officer Boncimino a photograph of an individual smirking while standing with his head close to derogatory images posted on Officer Boncimino's locker. The individual was a friend of Augello's, who, while in the courthouse as a visitor, was gratuitously recruited into mocking

Officer Boncimino.

116.   One of the images posted on Officer Boncimino's locker was the picture Augello took of Officer Boncimino lying in the hospital bed and another image was of the same picture photoshopped to depict him in a full body cast.  One of the images was of a cartoon character with the words **"MR. GLASS FOR THE REALLY TOUGH JOBS."**  One of the images was of a woman who had fallen and needed medical assistance.  One of the images was of the work-injury claim form stamped with the word **"REJECTED"**.  Yet another image was of a cartoon character in a body cast.

*117.*   While Officer Boncimino was out of work in the days that followed, he learned that he was the laughingstock of the office.  Defendants continued to make fun of him for his disability.

### *Defendants Fail to Accommodate Officer Boncimino When Denying His Request to Return to Work on Light Duty in early October 2015*

118.   Approximately one week after the injury, Officer Boncimino submitted a request to return to work on light duty.

119.   Defendants categorically denied his light duty request without engaging in the interactive process to determine what, if any, accommodation or light duty assignment he required.

120.   Defendant DeMarco, among others, made the decision to deny Officer Boncimino's light duty request based on discriminatory and retaliatory motives.

121.   Defendants told Officer Boncimino that he could only return to work on full duty, even though, upon information and belief, there were light duty positions to which Officer Boncimino could have been assigned and for which Officer Boncimino was qualified.

122.   Upon information and belief, at the time other court officers were assigned to conduct purely administrative functions and/or light duty.

***Defendants Escalate Their Campaign of Abuse***
***After Officer Boncimino Returns to Work in December 2015,***
***in Retaliation for Him Taking Medical Leave and***
***To Further Discriminate Against Him for His Disability,***

123.    When Officer Boncimino returned to work on full duty the second week of December 2015, Defendants retaliated against him for taking medical leave and discriminated against him based on his disability by subjecting him to unfavorable terms and conditions of employment and continuing to harass him.

124.    Defendants assigned him to work by himself on the 11th floor of the courthouse, where he did not have a partner to relieve him for rest breaks or to even use the restroom.

125.    On his first day back to work, Officer Boncimino visited the locker room, where he found the picture of himself lying in the hospital room still posted on his locker.

126.    Mortified and embarrassed by the posting, Officer Boncimino complained to his supervisors.

127.    However, Defendants took no remedial action to investigate Officer Boncimino's complaint or redress their unlawful conduct.

128.    Nor did Defendants follow-up with Officer Boncimino about his discrimination complaint.

129.    Instead, Defendants ramped up a full-scale campaign of retaliation and discrimination against Officer Boncimino, teasing and taunting him daily.

130.    Defendants' mockery became widespread and routine.

131.    Officer Boncimino was called **"FRAGIMINO"** and **"FRAGILMINO"** as a matter of course.

132.    Mocking photos and images of him were posted in various locations in the

courthouse.

133.   These retaliatory and discriminatory acts and others continued throughout the remainder of his employment.

134.   In January 2016, he was assigned back to Part 2.

135.   On his first day in Part 2, when Officer Boncimino picked up a clipboard containing the day's calendar, he found the picture of himself lying in the hospital bed placed conspicuously on top.

136.   The clipboard with the hospital picture was accessible to attorneys, litigants, court staff, court officers, and the public.

137.   Over the next several weeks, Defendants' unlawful conduct continued as Officer Boncimino's work-related knee injury resurfaced and Officer Boncimino began walking with a limp.  Defendants began calling him **"LIMPY GIMPY"**.

138.   In or about February or March 2016, an MRI revealed a cyst in Officer Boncimino's left knee stemming from the work-injury he suffered in 2012.  Medical screening of Officer Boncimino's left leg revealed continued peroneal neuropathy at the left knee.

139.   Officer Boncimino told his supervisors that he was in a lot of pain and that he needed to attend doctors' appointments.

140.   In response, Defendants told him to **"SUCK IT UP"** and **"TOUGHEN UP"** and forbade him from calling out sick for his injury.

141.   In the coming months as Officer Boncimino's knee pain grew severe, he had no choice but to take time off work.  He still tried to minimize his absences for fear of losing his job.

142.   In April 2016, Officer Boncimino saw for the first time the picture of himself lying in the hospital bed photoshopped to depict him in a bubble suit. The picture was posted both on

and inside his locker and in a clipboard with the daily calendar in the Part 2 courtroom.

143.   He immediately complained to Defendant Miglino, who, again, did nothing to investigate Officer Boncimino's complaint or redress the unlawful conduct.

144.   On one occasion around the same time, Defendants laughed at Officer Boncimino while telling him in the presence of court officers, supervisors and others, **"YOU SHOULD BE PUT IN A BUBBLE".**

145.   During the next several months, Defendants continued their campaign of discrimination against Officer Boncimino.

146.   Officer Boncimino grew increasingly alienated from his colleagues.

147.   He ate lunch by himself most days and interacted minimally with his colleagues.

148.   In September 2016, Defendants posted a piece of cardboard with the words **"FRAGILE, HANDLE WITH CARE"** and a cartoon image with the words **"MR. GLASS, FOR THE REALLY TOUGH JOBS"** on his locker.

149.   Officer Boncimino confronted officers in the building about the posting, but no one accepted responsibility.

### *Defendants Continue Abusing Officer Boncimino After Yet Another Courthouse Emergency on January 17, 2017 During Which Officer Boncimino Is Assaulted and Hurt*

150.   On January 17, 2017, Officer Boncimino was working in Part 10 (child neglect) when a female litigant who appeared to be approximately 6-feet tall and 250-pounds became recalcitrant and refused to leave the courtroom during recess.

151.   The presiding judge was still on the bench at the time and Officer Boncimino was the only officer who stood between the judge and the unruly litigant.

152.   When Officer Boncimino directed the litigant to exit the courtroom, the litigant

22

slammed the phone charger she was holding on a courtroom table and screamed "I am not going anywhere." She then sat back down and threatened to "kill" her mother for trying to obtain custody of her child. A short while later, she jumped out of her chair and charged at and hit Officer Boncimino's female partner.

153.    Officer Boncimino tried to restrain the litigant, but she was too heavy to control.

154.    Another officer came to assist Officer Boncimino when the litigant threw herself to the ground to avoid being detained.

155.    Officer Boncimino's body slammed to the ground with the litigant, causing him to sustain severe pain and injury.

156.    The litigant then bit his left ring finger so hard that she drew blood.

157.    The litigant was eventually restrained and later arrested for assaulting a court officer.

158.    Following the incident, the paramedics evaluated Officer Boncimino in the Operations Office.

159.    Officer Boncimino was extremely distraught and anxious given the immense pain he was in and because the litigant who bit him was a homeless prostitute who may have exposed him to infectious disease.

160.    While being examined, Officer Boncimino heard someone in the Operations Office exclaim **"FRAGIMINO IS BACK"** and several officers call him **"FRAGIMINO"** and/or **"FRAGILMINO"**, while laughing.

161.    Officer Boncimino was sent to the hospital in an ambulance.

162.    This time, breaking protocol, Defendants did not assign an officer to accompany Officer Boncimino.

163.     Because of the incident, Officer Boncimino's blood pressure was elevated and his anxiety level high. He sustained injury to his left hip, left knee and lower back, for which he was instructed to follow-up with an orthopedist.

164.     Hospital staff examined him, disinfected his wound, administered a tetanus shot and pain killers to him, took blood tests, and wrote him prescriptions for HIV prophylactics and antibiotics.

165.     After the hospital, Officer Boncimino returned to work so that he could submit the hospital discharge paperwork, which outlined the various injuries he sustained to his finger, knee, hip, and back, and which directed him to remain out of work for three days and follow-up with various physicians.

166.     When he submitted the paperwork, he explained to Lieutenant Judith McCabe in the Operations Office that he had sustained injuries to his finger, left knee, left hip, and lower back. He explained that he needed to follow-up with various physicians, undergo blood testing, and commence anti-retroviral medications to avoid contracting an infectious disease.  A few court officers were present in the Operations Office at the time. None of the commanding officers expressed sympathy for him.

167.     On January 19, 2017, Officer Boncimino was approved for FMLA leave for the timeperiod of January 18th to February 21st.

### Defendants Continue to Harass Officer Boncimino and Threaten His Employment When He Returns to Work on February 7, 2017 Following the Assault

168.     Officer Boncimino was out of work completely through February 6th (during which time he was under medical treatment and combatting sickness from the strong medications he was taking to prevent infection from the bite to his finger).

24

169.     While on leave, Officer Boncimino learned that one of the Defendants questioned the legitimacy of his injury, by facetiously asking whether Officer Boncimino had simply been scratched or scratched himself.

170.     On February 7, 2017, Officer Boncimino returned to work on light duty (per his doctor's orders) and continued to take intermittent FMLA leave thereafter.

171.     On his first day back to work, when he opened his locker the photoshopped image of him lying in a bubble suit fell to his feet.

172.     Within the first few days of his return to work, Officer Boncimino was called to testify before the Grand Jury in a criminal proceeding taking place in a courthouse located near Manhattan Family Court. As he was leaving to testify, Defendant Ricciardi facetiously asked "do you want me to call an ambulance to take you to testify in criminal court?"

173.     Officer Boncimino was disgusted and offended by the comment.  At the time, he was still on strong medications which made him ill, was highly anxious about the prospect of having contracted an infectious disease, and was in pain from the assault.

174.     For the next several weeks, his superiors, colleagues and members of the court staff continued to call him **"FRAGIMINO"** and **"FRAGILMINO".**

175.     During this time, Officer Boncimino continued to experience pain from the injury and significant side-effects from the anti-retroviral medications he was taking.  As a result, he took a few sick days off work.

176.     On March 9th, Defendant Miglino and other supervising officers summoned Officer Boncimino to a meeting where they intimidated and berated him.  In the presence of his union representative, Philip Matteo, Defendant Miglino stated, **"WE KNOW THAT YOU HAVE INJUIRES BUT YOU NEED TO BE HERE OR WE CAN LABEL YOU A SICK**

LEAVE ABUSER"–implying that any further sick leave, however legitimate, would give Defendants grounds to terminate him.  Officer Boncimino asked how he could be labeled a "sick leave abuser" when he had completed and submitted all the paperwork necessary to take time off work for his work-related disability.

177.    Immediately after the meeting, Officer Boncimino complained to Cheryl Bullock of Human Resources about Defendants' discriminatory conduct. Bullock told Officer Boncimino that "there are people who miss 40, 50 days a year and they are not labeled 'sick leave abusers.'"

178.    No remedial action was taken in response to Officer Boncimino's complaint and only a week later Defendants retaliated against him for complaining.

### Defendants Retaliate and Discriminate Against Officer Boncimino By Transferring Him to Brooklyn Family Court on March 16, 2017

179.    On March 16th, Defendant DeMarco summoned Officer Boncimino to a meeting. During the meeting, Defendant DeMarco told Officer Boncimino, **"I DON'T NEED YOU HERE ANY MORE. YOU'RE NOT DOING ANYTHING FOR ME.  I NEED YOU TO DO MORE LAW ENFORCEMENT WORK,"** and informed Officer Boncimino that he was being transferred to Brooklyn Family Court where he would report to Defendant Dibello (the individual who had called him **"BROKEN"** and subjected him to undue scrutiny years earlier).

180.    Defendant DeMarco then humiliated Officer Boncimino by calling Defendant Miglino and stated in sum and substance, **"I AM TRANSFERRING OFFICER BONCIMINO TO BROOKLYN. WE NEED OFFICERS THAT CAN WORK. I AM GOING TO TRY TO GET YOU ANOTHER OFFICER."**

181.    On March 20th, when Officer Boncimino reported to Brooklyn Family Court, Captain John Posillipo, who was aware of Officer Boncimino's disability, assigned Officer

Boncimino to do fingerprinting.  Fingerprinting is labor-intensive, as it requires standing for prolonged periods of time and physical exertion to manipulate the subject's body and hand, and is done by full duty officers, not light duty officers.  Officer Boncimino complained to the sergeant on duty that he did not feel well, had limitations due to his disability, and that fingerprinting would be too physically onerous.  The sergeant ignored Officer Boncimino's concerns and forced him to do fingerprinting.

182.    For hours at a stretch, Officer Boncimino was required to stand and manipulate bodies for fingerprinting.  The physical exertion exacerbated his already debilitating condition.

### *Officer Boncimino's Line of Duty Injury Worsens, Necessitating a Leave of Absence and Triggering a String of Unlawful Actions by Defendants March 2017*

183.    On March 22nd, Officer Boncimino was directed by his orthopedist to take a line-of-duty medical leave of absence from work and was referred to an orthopedic specialist.

184.    Officer Boncimino sent an email to Human Resources explaining that he needed to commence a leave of absence and attaching a doctor's note to substantiate his injuries.

185.    On March 23rd, Officer Boncimino was approved for FMLA leave for the timeperiod of March 22nd to March 31st.

186.    On March 28th, Officer Boncimino was directed by an orthopedic specialist to remain out of work on medical leave.  That same day, the specialist's office completed and submitted to Defendants medical paperwork regarding Officer Boncimino's disability.

187.    On March 30th, Officer Boncimino received a telephone call from Della Nelson of Human Resources wrongly accusing him of lying about his hip injury.  Nelson falsely accused Officer Boncimino of reporting injury to the wrong hip, which Officer Boncimino immediately refuted.  Nelson went on to tell Officer Boncimino that he would not be covered by workers'

compensation for his hip or back injury.  Nelson also said, **"do not try to claim your back now,"** implying that Officer Boncimino would concoct an injury to his back (even though hospital records showed that he did, in fact, suffer an injury to his lower back on January 17th).   Nelson told him that he would have to apply for a non-work-related absence and would have to use his own paid time off (PTO).

188.    In early April, Officer Boncimino visited a physiatrist in hopes of having his body treated as a whole.  The physiatrist diagnosed Officer Boncimino with (i) a sprain/strain to his left hip, left knee, and lower back, and (ii) lumbar radiculopathy.  Later, an MRI examination revealed 2 herniated discs in Officer Boncimino's back and an EMG nerve conduction study revealed nerve root impingement and continued left peroneal nerve neuropathy.

189.    Officer Boncimino gave Defendants paperwork completed by the physiatrist's and, on April 12th, submitted a request for FMLA leave for the period of April 3rd to May 31st. Defendants never responded to this request.

190.    On April 13th, following an MRI examination of his hip, Officer Boncimino was diagnosed with left hip impingement and a left hip labral tear.

191.    In mid-May, Officer Boncimino applied to return to work on light duty, which Defendants denied.

### Defendants' Hostility Continues
### After Officer Boncimino Returns to Work on Light Duty
### on June 12, 2017

192.    Only after Officer Boncimino used all his PTO did Defendants agreed to return him to work on light duty.

193.    As instructed, Officer Boncimino reported to Defendant DeMarco in Manhattan Family Court at 9:00 a.m. on June 12th.

194.    That morning, when Officer Boncimino reported to work, Defendant DeMarco demanded to know about each of Officer Boncimino's doctor visits going forward. Defendant DeMarco went on to threaten, **"I DON'T KNOW HOW YOU WILL GO TO THE DOCTOR. YOU HAVE NO MORE TIME LEFT."**  Defendant DeMarco then told a sergeant to take "*Mr.* Boncimino" (not "*Officer* Boncimino") to his new assignment.

195.    Within the first or second day of Officer Boncimino's return to work, Officer Boncimino learned that a captain had told a senior court analyst that Officer Boncimino was a **"RAT"** who **"CANNOT BE TRUSTED"** and instructed her to not talk to him.

196.    On June 22nd, Officer Boncimino received news that workers' compensation deemed all his injuries work-related.

197.    On June 29th, Officer Boncimino received a letter confirming that his absences were covered as leave for a line-of-duty-injury, but stating that Officer Boncimino **"MUST" schedule doctors' appointments on his own time, outside work hours.**

198.    For the next few months, Officer Boncimino worked light duty.  Even though he continued to suffer from his disabilities and undergo medical treatment, he tried to minimize his absences.

### *Defendants' Acts of Discrimination on August 17, 2017,*
### *Leading Officer Boncimino to His Breaking Point*

199.    On August 17th at approximately 11:00 a.m., Defendant Ricciardi barged into Officer Boncimino's office to inform him that that his locker had been relocated next to a soda machine in a different locker room.

200.    Defendant Ricciardi then demanded to know when Officer Boncimino would be returning to full duty.

201.    Confused about his locker being relocated, Officer Boncimino went down to the locker room to see where, exactly, his locker had been reassigned.

202.    When he opened his locker, he found a piece of paper with the word **"CUNT"** above his forged signature and a notary stamp.  He also found an image of himself in full body armor and a cardboard cutout of the words **"FRAGILE HANDLE WITH CARE"** (which he had previously seen many times).

203.    Officer Boncimino immediately flashed back to all Defendants' prior acts of discrimination and suffered a panic attack.  He was forced to leave work in the middle of his shift to visit the emergency room of a local hospital.

204.    The hospital doctor prescribed medication for his panic attack and recommended that he take time off work and follow-up with his primary care physician and/or therapist.

205.    Since then, Officer Boncimino has not returned to work and has been in treatment with various medical professionals for the severe mental and emotional distress and physical impairment he is experiencing as a result of Defendants' egregious conduct.  Officer Boncimino's therapist recommends that he not return to work for at least three weeks.

206.    On August 25th, Officer Boncimino submitted a note from his therapist to several individuals in Human Resources and Defendants' Workers' Compensation Unit.  The note directs Officer Boncimino to take a medical leave of absence for approximately three weeks and return to work on September 18, 2017, depending on his progress in treatment.

### Defendants Harass Officer Boncimino in His Home and Harass Officer Boncimino's Mother on August 28, 2017

207.    On August 28th, while Officer Boncimino was at home on medical leave, a sergeant and officer showed up at his home and banged on his door.

208.     The sergeant demanded to know the status of Officer Boncimino's condition. Officer Boncimino explained that he did not feel well. The sergeant repeatedly demanded that Officer Boncimino call the major.

209.     The sergeant and officer left but then banged on Officer Boncimino's door a few minutes later, demanding to see Officer Boncimino's identification card. Officer Boncimino complied with their request.  Again, the sergeant instructed Officer Boncimino to call the major.

210.     The sergeant and officer left but then banged on Officer Boncimino's door a third time while Officer Boncimino was in the bathroom.  They were banging so loudly that he could hear them while he was taking a shower.

211.     When Officer Boncimino emerged from the bathroom, he found a note the officers left under his door instructing him, yet again, to call the major.

212.     At approximately the same time someone contacted Officer Boncimino's mother and left a threatening voicemail demanding that Officer Boncimino contact the major.

213.     The harassment in his home and of his mother caused Officer Boncimino to suffer another panic attack.  He visited a local urgent care facility where he was diagnosed with anxiety and diarrhea and instructed to temporarily not work.

214.     Officer Boncimino complained to Human Resources about the harassment in his home and of his mother.  Human Resources failed to respond or even acknowledge Officer Boncimino's complaint.

215.     Upon information and belief, Defendants conducted no investigation nor took remedial action to redress their unlawful conduct.

216.     On August 30, 2017, Nelson told Officer Boncimino that the August 17th incident "is not considered to be workers' compensation related".

31

217.    To date, Officer Boncimino remains out of work on medical leave.

218.    He continues to learn that Defendants made discriminatory remarks about his disabilities.

219.    Defendants continue to harass and discriminate and retaliate against Officer Boncimino by denying, without basis, Officer Boncimino's leave benefits.  Defendants have worked with Officer Boncimino's union to deny Officer Boncimino his rights under the pertinent collective bargaining agreement.

220.    Defendants' discriminatory and retaliatory conduct is on-going.

### FIRST CAUSE OF ACTION
**(Failure to Provide a Reasonable Accommodation
in Violation of the Rehabilitation Act
against the State)**

221.    Officer Boncimino repeats and realleges all paragraphs above as though fully set forth herein.

222.    Officer Boncimino's physical impairment as described in this Complaint constitutes a disability within the meaning of the Rehabilitation Act

223.    The Rehabilitation Act prohibits and defines discrimination based on disability as a failure to "mak[e] reasonable accommodations to the known physical or mental limitations of an otherwise qualified [employee] with a disability." 42 U.S.C. §§ 12112(a), 12112(b)(5).

224.    The State violated the Rehabilitation Act by failing to accommodate Officer Boncimino's known physical limitations of his disability.

225.    As a proximate result of the State's unlawful acts of discrimination, Officer Boncimino has endured emotional pain, emotional suffering, inconvenience, mental anguish, loss of enjoyment of life, loss of personal dignity, loss of self-esteem, loss of career fulfillment,

embarrassment, humiliation and harm to his reputation.

226.   As a proximate result of the State's unlawful acts of discrimination, Officer Boncimino has suffered and continues to suffer substantial losses in past and future earnings and other fringe benefits.

**SECOND CAUSE OF ACTION**
**(Failure to Provide a Reasonable Accommodation**
**in Violation of City Human Rights Law**
**against the Individual Defendants)**

227.   Officer Boncimino repeats and realleges the foregoing paragraphs as if fully set forth herein.

228.   Officer Boncimino's physical impairment as described in this Complaint constitutes a disability within the meaning of the City Human Rights Law. N.Y.C. Admin. Code § 8-102(16).

229.   Section 8-107(15)(a) of the City Human Rights Law requires employers to "make [a] reasonable accommodation to enable a person with a disability to satisfy the essential requisites of a job or enjoy the right or rights in question provided that the disability is known or should have been known by the covered entity."

230.   The Individual Defendants intentionally and willfully violated City Human Rights Law Section 8-107 by refusing to accommodate him.

231.   The Individual Defendants aided and abetted these violations.

232.   As a proximate result of the Individual Defendants' unlawful acts of discrimination, Officer Boncimino has endured emotional pain, emotional suffering, inconvenience, mental anguish, loss of enjoyment of life, loss of personal dignity, loss of self-esteem, loss of career fulfillment, embarrassment, humiliation and harm to his reputation.

233.    As a proximate result of the Individual Defendants' unlawful acts of discrimination, Officer Boncimino has suffered and continues to suffer substantial losses in past and future earnings and other fringe benefits.

### THIRD CAUSE OF ACTION
**(Harassment and Discrimination Against Officer Boncimino
Based on Disability
in Violation of the Rehabilitation Act
against the State)**

234.    Officer Boncimino repeats and realleges all paragraphs above as though fully set forth herein.

235.    Officer Boncimino's physical impairment as described in this Complaint constitutes a disability within the meaning of the Rehabilitation Act.

236.    The State intentionally and willfully violated the Rehabilitation when it harassed and discriminated against him because of his known disability.

237.    As a proximate result of the State's unlawful acts of discrimination, Officer Boncimino has endured emotional pain, emotional suffering, inconvenience, mental anguish, loss of enjoyment of life, loss of personal dignity, loss of self-esteem, loss of career fulfillment, embarrassment, humiliation and harm to his reputation.

238.    As a proximate result of the State's unlawful acts of discrimination, Officer Boncimino has suffered and continues to suffer substantial losses in past and future earnings and other fringe benefits.

### FOURTH CAUSE OF ACTION
**(Harassment and Discrimination Against Officer Boncimino
Based on Disability
in Violation of City Human Rights Law
against the Individual Defendants)**

239.    Officer Boncimino repeats and realleges the foregoing paragraphs as if fully set

34

forth herein.

240.    Officer Boncimino's physical impairment as described in this Complaint constitutes a disability within the meaning of City Human Rights Law. N.Y.C. Admin. Code § 8-102(16).

241.    Section 8-107(1)(a) of the City Human Rights Law provides, in pertinent part, that it shall be an unlawful discriminatory practice "[f]or an employer or an employee or agent thereof, because of the actual or perceived…disability…to… discriminate against such person in compensation or in terms, conditions or privileges of employment."

242.    The Individual Defendants intentionally and willfully violated City Human Rights Law by harassing and discriminating against Officer Boncimino during his employment because of his disability.  N.Y.C. Admin. Code § 8-107.

243.    The Individual Defendants also aided and abetted these violations.

244.    As a proximate result of Individual Defendants' unlawful acts of discrimination, Officer Boncimino has endured emotional pain, emotional suffering, inconvenience, mental anguish, loss of enjoyment of life, loss of personal dignity, loss of self-esteem, loss of career fulfillment, embarrassment, humiliation and harm to his reputation.

245.    As a proximate result of the Individual Defendants' unlawful acts of discrimination, Officer Boncimino has suffered and continues to suffer substantial losses in past and future earnings and other fringe benefits.

**FIFTH CAUSE OF ACTION**
**(Retaliation Against Officer Boncimino**
**in Violation of the Rehabilitation Act**
**against the State)**

246.    Officer Boncimino repeats and realleges the foregoing paragraphs as if fully set

forth herein.

247.    By the acts and practices described above, the State retaliated against Officer Boncimino because he requested a reasonable accommodation and complained about violations of the Rehabilitation Act, in violation of the Rehabilitation Act.

248.    The State knew that its actions constituted unlawful retaliation and/or acted with malice or reckless disregard for Officer Boncimino's statutorily protected rights.

249.    Officer Boncimino has suffered and will continue to suffer irreparable injury, monetary damages, mental anguish, humiliation, and damage to his reputation as a proximate result of the State's retaliatory practices, unless and until this Court grants the relief hereinafter described.

## SIXTH CAUSE OF ACTION
### (Retaliation Against Officer Boncimino
### in Violation of City Human Rights Law
### against the Individual Defendants)

250.    Officer Boncimino repeats and realleges the foregoing paragraphs as if fully set forth herein.

251.    By the acts and practices described above, the Individual Defendants retaliated against Officer Boncimino because he requested a reasonable accommodation and complained about violations of the City Human Rights Law, in violation of the City Human Rights Law.

252.    Individual Defendants knew that their actions constituted unlawful retaliation and/or acted with malice or reckless disregard for Officer Boncimino's statutorily protected rights.

253.    The Individual Defendants also aided and abetted these violations.

254.    Officer Boncimino has suffered and will continue to suffer irreparable injury, monetary damages, mental anguish, humiliation, and damage to his reputation as a proximate

result of Individual Defendants' retaliatory practices, unless and until this Court grants the relief hereinafter described.

## SEVENTH CAUSE OF ACTION
### (FMLA Retaliation Against Officer Boncimino
### in Violation of the FMLA
### against the Individual Defendants)

255.    Officer Boncimino repeats and realleges all paragraphs above as though fully set forth herein.

256.    Individual Defendants retaliated against Officer Boncimino for asserting his FMLA rights by harassing him following his January 2017 injury.

257.    Individual Defendants' violations of Officer Boncimino's FMLA rights were willful and intentional.

258.    As a result of Individual Defendants' unlawful acts, Officer Boncimino suffered damages, including past and future lost wages and benefits, liquidated damages, reasonable attorneys' fees and costs of bringing this action.

## PRAYER FOR RELIEF

**WHEREFORE**, Officer Boncimino respectfully requests that this Court enter judgment awarding on Officer Boncimino's Causes of Action:

i.   back pay, prejudgment interest, front pay and damages for all employment benefits Officer Boncimino would have received but for the unlawful acts and practices of Defendants;

ii.  compensatory damages;

iii. punitive damages;

iv.  liquidated damages;

37

v.   reasonable attorneys' fees and costs incurred in this action; and

vi.  any other relief that the Court deems just and proper.


## DEMAND FOR TRIAL BY JURY

Officer Boncimino demands a trial by jury.


Dated: New York, New York
        January 22, 2018

                              Respectfully submitted,

                              **FISHER TAUBENFELD LLP**


                      By:  _____/s/_____
                              Liane Fisher, Esq. (LF5708)
                              Michael Taubenfeld (MT4640)
                              *Attorneys for Plaintiff*
                              225 Broadway, Suite 1700
                              New York, New York 10007
                              Phone: (212) 571-0700
                              Fax: (212) 505-2001